**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Gregory GOLYANSKY; Leonid Golyansky; Dmitriy Baravik; Almaz Corporation doing business as ABC Loan Company, Defendants–Appellees.**

**No. 01–1499.**

United States Court of Appeals, Tenth Circuit.

March 5, 2002.

---

4. We express no opinion whether Congress intended to preempt regulation of source sep-

arated recyclables.

**1332**

Sean Connelly, Assistant United States Attorney (John W. Suthers, United States Attorney; Robert C. Troyer, Assistant United States Attorney, with him on the briefs), Denver, Colorado, for the Plaintiff–Appellant.

John M. Richilano of Richilano & Ridley, PC (Lisa Monet Wayne, Denver, Colorado; Stephen C. Peters and Marci A. Gilligan of Lindquist & Vennum, PLLP, Denver, Colorado, with him on the brief), Denver, Colorado, for Defendants–Appellees.

* The Honorable Wayne E. Alley, United States District Judge for the Western District of Oklahoma, sitting by designation.

Before BRISCOE and BALDOCK, Circuit Judges, and ALLEY, District Judge.*

BALDOCK, Circuit Judge.

On interlocutory appeal, the Government challenges a district court order excluding the testimony of a Government witness. The district court excluded the testimony as a sanction after finding the Government violated court discovery orders by failing to timely disclose impeachment evidence regarding the witness. We have jurisdiction pursuant to 18 U.S.C. § 3731. We reverse and remand for further proceedings.

## I.

A grand jury indicted Defendants on 37 counts, alleging Defendants knowingly and willfully sold firearms through "straw purchasers" to buyers whose backgrounds were never checked. Specifically, the Government alleges women involved in eighteen firearm transactions actually were straw buyers for their male companions. The indictment charges Defendants under the conspiracy statute, 18 U.S.C. § 370, and two substantive criminal statutes: the false statement statute, 18 U.S.C. § 1001, and the statute prohibiting licensed dealers from selling firearms without recording the buyer's name, age, and place of residence, 18 U.S.C. § 922(b)(5). The district court excluded testimony of the female buyer in six of the eighteen transactions. Exclusion of the testimony likely would require the Government to dismiss thirteen counts.

Shortly after the grand jury returned the indictment, a federal magistrate judge entered standard discovery orders providing, in relevant part:

The defendant requests disclosure of evidence favorable to the defendant on the issue of guilt and/or sentencing. The government states that it will disclose material evidence which is favorable to the defendant as required by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); and *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). The government acknowledges its continuing duty to make these disclosures.

Subsequently, Defendants filed a joint motion for *Brady* material seeking "all evidence favorable to any one or more of the defendants, where that evidence is material either to guilt or punishment, including without limitation exculpatory evidence, impeachment evidence and any evidence which bears on witness credibility." The motion also contained more specific requests. In response to Defendants' request for impeachment information, the Government's brief stated: "The government understands its *Giglio* obligations and will provide the defense with all information that materially impeaches government witnesses." In a separate section of the same brief, the Government stated: "The prosecution has provided (and will continue to provide) the defense with all *Brady* evidence that comes into its possession."

The district court held a discovery hearing in which it reviewed Defendants' *Brady /Giglio* requests. The court indicated it was not satisfied with the Government's "boilerplate" responses to Defendants' discovery requests, and asked the Government to indicate whether it had or when it would provide the requested information. In reviewing Defendants' general request for *Brady /Giglio* material, the court indicated: "That is a pretty general disclosure [request]. I assume [the Government] will comply with that." He then reviewed each specific discovery request. The Government indicated it had provided or would provide by the agreed date the specifically requested information. Defendants then emphasized the need for impeachment information concerning the Government's civilian witnesses:

> We received some information relating to those individuals. But we don't know what else there is, and so we simply press the point here, your honor, that respecting *any impeachment type mate-.rials,* any inducements given to those individuals, *anything we might be able to use in cross-examining them.*

(emphases added). The court responded: "I think [Government counsel] has indicated he does not have any[thing] else.... I don't expect he is going to change his mind." The Government attorney did not contradict the court's assertion. The court then stated: "So if [Defendants] have got everything, it seems to me like [Defendants' *Brady /Giglio* motion] is moot."

Subsequently, Defendants filed a motion to suppress the testimony of a key Government witness. In that motion, Defendants argued the Government violated its *Brady /Giglio* obligations by failing to disclose evidence of the witness' extensive mental health issues. After receiving Defendants' motion, the Government sent Defendants a three-page summary of the witness' mental history "as part of our continuing obligation to advise you of potential *Brady /Giglio* information." Defendants received the information nineteen days before trial. The district court held a hearing on Defendants' motion at which the Government conceded it had been aware of the witness' serious mental health issues for several years. The Government also conceded it had an affirmative duty to disclose the information as material impeachment evidence. The Government argued, however,

that *Brady/Giglio* did not require it to disclose the information prior to trial.

At the hearing, Defendants argued the Government's failure to turn over the evidence until nineteen days before trial was particularly problematic in light of the importance of the witness' testimony and their lack of access to the witness. The witness alleges she purchased sixty-six weapons from Defendants. She also alleges Defendants knew the weapons were actually purchased for her boyfriend, a convicted felon. The witness' testimony is necessary to establish Defendants' state of mind for thirteen of the thirty-seven counts. Her credibility is a critical issue. As the district court found, the Government knew her severe mental health issues would be a significant issue at trial. The witness also was not available to Defendants. Citing safety concerns unrelated to Defendants or this case, the Government relocated the witness on two occasions. Defendants had not been able to locate the witness to request an interview or to issue a subpoena pursuant to Fed.R.Crim.P. 17(c).

The district court granted Defendants' motion to exclude the witness' testimony. In so ruling, the court informed the Government:

> I think you're correct that *Brady*—technically *Brady* material can be given at any time after the witness testifies. But I don't see that as an issue here ... Even though *Brady* gives you the option of doing it that way, I think you're hard pressed to stand there and rely on the case law in *Brady* that says you have a right to withhold that information until after the testimony when in fact there are specific orders in this case to the contrary.

The Government stated it was not sure a specific order had been entered in this case. In response, the court stated: "My recollection is and my practice clearly is to require those disclosures in advance of trial, not allow you the specific restrictions of *Brady*." The court also noted: "It was certainly implied by pretrial information—by a pretrial ruling in this case that [reliance on the specific requirements of *Brady* ] was not going to be the order of this court." The district court then entered an order excluding the witness' testimony.

On appeal, the Government asserts the district court's pre-trial orders did not require the Government to disclose impeachment information at any particular time. Accordingly, the Government argues the district court order is sustainable only if the Government violated *Brady/Giglio* by disclosing impeachment information nineteen days before trial. Defendants contend the district court acted within its discretion by excluding the witness' testimony as a sanction for the Government's violation of court discovery orders.

## II.

■ District courts have broad discretion to sanction a party who violates discovery orders. *United States v. Gonzales,* 164 F.3d 1285, 1291 (10th Cir.1999). We review a district court's decision to impose sanctions, and the court's choice of sanction, for an abuse of discretion. *Id.* Based upon our review of the record, the district court did not abuse its discretion in choosing to sanction the Government for a discovery violation. The court clearly believed it had conveyed orders to promptly and continuously disclose material impeachment evidence. Defense counsel held a similar view of the parties' discovery obligations. In discovery hearings, the court ordered the Government to promptly disclose *Brady/Giglio* material in response to Defendants' specific discovery requests. The Government did not object. The Government also did not contradict the court when it stated on the

record that the Government had disclosed all impeachment evidence in its possession. Finally, the Government made several statements in discovery briefs and during discovery hearings that led both the court and defense counsel to conclude the Government had disclosed all impeachment evidence in its possession. These facts are sufficient to support the district court's imposition of a sanction.

■ In selecting a proper sanction, the district court should consider "(1) the reasons the government delayed producing requested materials, including whether the government acted in bad faith; (2) the extent of prejudice to the defendant as a result of the delay; and (3) the feasibility of curing any prejudice with a continuance." *Gonzales,* 164 F.3d at 1292 (citing *United States v. Russell,* 109 F.3d 1503, 1511 (10th Cir.1997)). In the absence of a finding of bad faith, the court should impose the least severe sanction that will accomplish prompt and full compliance with the discovery order. *See id.* (citing *United States v. Ivy,* 83 F.3d 1266, 1280 (10th Cir.1996)); *United States v. Wicker,* 848 F.2d 1059, 1060 (10th Cir.1988). The preferred sanction is a continuance. *Gonzales,* 164 F.3d at 1292. In the absence of bad faith, the district court properly excludes evidence only where prejudice to the defense cannot be cured by a continuance. *See id.*

The district court found the Government's failure to disclose impeachment information in response to Defendants' discovery requests constituted a substantial error in judgment, but not necessarily bad faith.[2] In addressing the prejudice prong, the court noted only that Defendants would be subject to additional financial burdens should the case be continued.[3] Although Defendants might personally be affected by the Government's actions, we find nothing to support the court's view that the prejudice to Defendants' case was such that it could not be cured by a continuance.

■ To support a finding of prejudice, the court must determine that the delay impacted the defendant's ability to prepare or present its case. *See Ivy,* 83 F.3d at 1280; *see also United States v. Garrett,* 238 F.3d 293, 299 (5th Cir.2000); *United States v. Cruz–Velasco,* 224 F.3d 654, 663 (7th Cir.2000); *United States v. Chastain,* 198 F.3d 1338, 1348 (11th Cir. 1999). In considering the feasibility of curing Defendants' prejudice through a continuance, the court should consider whether a continuance will effectively cure the unfair surprise suffered as a result of the Government's delayed disclosure. *See Ivy,* 83 F.3d at 1280. Nothing in the record suggests that, given time, Defendants cannot adequately incorporate the impeachment evidence into the presentation of their case. Defendants have not yet empaneled a jury or committed themselves through opening statements or cross-examination to a particular defense. *Cf. Wicker,* 848 F.2d at 1062; *Chastain,* 198 F.3d at 1348; *see also United States v. Euceda–Hernandez,* 768 F.2d 1307, 1312 (11th Cir.1985). The expense of preparing an expert to testify on the witness' mental

---

2. The district court stated: "I'm not going to make a finding of bad faith on the part of the prosecution. By the same token, I'm not sitting here and telling you that finding would not be a potential finding had I—if I had more evidence."

3. Specifically, the court noted: "[Defendants] are out of money. They sold their business. They are ready for trial now. They would have a lot of duplicitous preparation to get ready for trial at a future time. They are exposed to substantial potential liability based on a mistake in judgement by the prosecution.... It appears to me justice demands that these defendants not be charged one way or another or penalized for that error in judgement."

health is an expense Defendants would have born even if the Government had promptly disclosed the evidence. The concept of prejudice does not encompass the expense of additional trial preparation. *See Garrett,* 238 F.3d at 299. We conclude a continuance could have cured the prejudice to Defendants' case. Accordingly, we conclude the district court abused its discretion in excluding the Government's witness as a discovery sanction.

We remand to the district court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.