**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 9 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellant,

v.

MAURICE IVORY,

      Defendant - Appellee.

No. 04-3233
(D.C. No. 03-20167-JWL)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, **McWILLIAMS**, and **KELLY**, Circuit Judges.[**]

The government appeals from the district court's order granting

Defendant-Appellee Maurice Ivory's motion to exclude evidence as a sanction for

a discovery violation.  Mr. Ivory was indicted for possession with intent to

distribute crack cocaine, possession of a firearm in a drug trafficking crime, and

being a felon in possession of a firearm.  The evidence excluded was DNA testing

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

tending to show that Mr. Ivory had handled a firearm. Our jurisdiction arises under 18 U.S.C. § 3731, and we reverse. On remand the district court may consider a lesser sanction than exclusion of the DNA evidence.

Background

On January 8, 2004, after arraignment, a standard order of discovery was entered requiring the government to copy or let the defendant copy "[w]ithin a reasonable time period after arraignment[:]"

> [a]ny results or reports of . . . scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and which are material to the preparation of a defense or are intended for use by the government as evidence in chief at the trial.

Aplt. App. 17-18; see also Fed. R. Crim. P. 16(a)(1)(F). With a jury trial scheduled for July 6, 2004, defense counsel on June 2, 2004, sought to have an independent fingerprint analysis performed on a gun found in a vehicle used by Mr. Ivory. Although fingerprint and DNA testing by local law enforcement had occurred in October 2003, the government contends that the report never made it to its investigative file. Once the government obtained the report, it learned that the gun had been swabbed for DNA, a procedure not requested by the government.

The government then advised defense counsel that the DNA swab was being tested, and furnished the curriculum vitae of its DNA expert who was scheduled to be on leave during the July 6, 2004, jury trial. Upon learning the inculpatory results of the DNA test, the government advised defense counsel and proposed various alternatives to the expert's appearance at the July 6 trial. Ultimately, defense counsel indicated that he would oppose a continuance or a deposition of the DNA expert. The government filed a motion so requesting, and defense counsel filed a motion to exclude the DNA evidence on the grounds that the government had failed to comply with the discovery order.

The district court granted defense counsel's motion, applying the factors in United States v. Wicker, 848 F.2d 1059, 1061 (10th Cir. 1988); see also Fed. R. Civ. P. 16(d)(2)(C). The court found that the government had violated the discovery order by not exercising due diligence to obtain and produce the report in a timely fashion, but it had not acted in bad faith. According to the district court, Mr. Ivory was prejudiced because he did not receive the results of the DNA test implicating him until June 22, leaving too little time for defense counsel to procure an expert to meet the DNA evidence at trial. The court acknowledged that it could continue the trial to allow Mr. Ivory an adequate time to prepare consistent with the Speedy Trial Act. But the court held that such a continuance would prejudice Mr. Ivory because, should he be unable to rebut the DNA

evidence after a continuance, he would have been better off with the July 6 trial date, as the government's DNA expert was not available, or not available in person.

In excluding the DNA evidence, the court placed the most weight on a deterrence rationale–deterring the government's future non-compliance with its discovery orders. The court noted that in some cases a sanction may be necessary even absent prejudice to the defendant. As support for this rationale, the court catalogued discovery problems in four unrelated criminal cases. The court noted that the government attorneys were overworked, but more attention needed to be paid to complying with discovery obligations earlier, rather than later, so as to avoid these disputes which often resulted in delay and continuances. Aplt. App. 167.

## Discussion

We review the district court's sanction for an abuse of discretion. Wicker, 848 F.2d at 1060. In Wicker, we explained:

> When the government fails to comply with a discovery order, the
> factors the district court should consider in determining if a sanction
> is appropriate are (1) the reasons the government delayed producing
> the requested materials, including whether or not the government
> acted in bad faith when it failed to comply with the discovery order;
> (2) the extent of prejudice to the defendant as a result of the
> government's delay; and (3) the feasibility of curing the prejudice

with a continuance.[1]

Id.  Though not delineating the bounds of the district court's discretion, these factors are subject to the principle that any sanction should be the least severe to accomplish compliance with the court's discovery orders.  Id. at 1060.  In the absence of prejudice, the court must also consider whether such a sanction is necessary to maintain the "integrity and schedule" of the court.  Id. at 1061.

Judged against these principles, the district court abused its discretion.  We do not fault the district court in finding that its discovery order had been violated, and that such violation, while not in bad faith, was a product of inattention.  Nor do we fault the district court for finding that Mr. Ivory needed additional time to meet the government's DNA evidence.  The district court expressly found that it could have remedied the preparation problem with the grant of a continuance. Aplt. App. 163.  In such circumstances, a continuance, or a lesser sanction accompanied by a continuance, ought to occur.  United States v. Golyansky, 291 F.3d 1245, 1249 (10th Cir. 2002); see also United States v. Gonzales, 164 F.3d 1285, 1293 (10th Cir. 1999) (suggesting lesser sanctions such as censuring the

---

[1]  We have remarked that the third factor is "essentially irrelevant" when a defendant opposes a continuance.  United States v. Ivy, 83 F.3d 1266, 1281 (10th Cir. 1996).  Ivy did not consider the interests of the government in curing any prejudice with a continuance, as opposed to exclusion, and possible lesser sanctions.  Given the posture of this case (exclusion of evidence by the district court), the government has raised these issues.

government attorney). "It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings." Golyansky, 291 F.3d at 1249. This is not that rare case, particularly given that trial was not underway (nor had a jury been empaneled), and a relatively short continuance (one month according to defense counsel at oral argument) would solve the problem with respect to Mr. Ivory without impairing his speedy trial rights.

We reject the district court's finding that Mr. Ivory would have suffered prejudice because his trial date necessarily would have coincided with the absence of the government's DNA expert. See Aplt. App. 163 ("So ironically here while the prejudice in that sense [inability to meet the DNA evidence] could be cured in terms of giving the defendant some time to prepare, it would actually in many ways work to the defendant's disadvantage because it would play right into what the government really wants to have, which is more time - - or, pardon me, an opportunity to have the witness available in person."). First, such a finding is counter-factual. At the hearing, the government represented that its DNA expert was under subpoena and would be at trial if the court refused to continue the trial and would not allow for a deposition. Aplt. App. 154. Second, even assuming that the witness would have been absent, such a claim of prejudice is inimical to the truth-seeking function of a trial. Cf. Gonzales, 164 F.3d at 1292 (noting that the discovery sanction must bear some relationship to the purposes the law is to

serve including protection of the defendant and the public).

Even in the absence of bad faith and prejudice, our cases suggest that the district court theoretically could impose such a sanction. United States v. Russell, 109 F.3d 1503, 1511 (10th Cir. 1997); Wicker, 848 F.2d at 1061; but see Gonzales, 164 F.3d at 1292 (noting that the Supreme Court has never approved exclusion of evidence as a sanction absent a constitutional or statutory violation); United States v. Charley, 189 F.3d 1251, 1262 (10th Cir. 1999) (same). We see two errors here. First, the court's reliance upon four other cases involving the government's discovery conduct without prior notice to the government was error. The government had no way of knowing that the district court would consider these cases. Mr. Ivory certainly did not argue them in his motion. Aplt. App. 116-122. Thus, the government lacked any opportunity to discuss or distinguish them. That has led to the government's improper (but understandable) attempt to supplement the record below and in this court and Mr. Ivory's (also understandable and legally justified) opposition. See Fed. R. App. P. 10(e)(1) (permitting the district court to conform record to what occurred in district court); United States v. Kennedy, 225 F.3d 1187, 1191 (10th Cir. 2000) (court of appeals does not consider material not before the district court).

Second, we question whether this case is the proper vehicle for finding heretofore unannounced discovery violations by the government in those other

cases. The cases do not appear to be related except in the most general terms--

three of four involve different government counsel. Cf. Taylor v. Illinois, 484

U.S. 400, 416 n.22 (1988) (unrelated discovery violations in other cases by

defense counsel normally could not preclude defendant's right to present a

complete defense). In light of our resolution, we need not pass on whether the

discovery sanction of exclusion of evidence in one case may ever be based upon

discovery violations in another. On remand, the district court may consider a

lesser sanction.

The dissent suggests that the district court's suppression order should be

affirmed based upon its evaluation of the three Wicker factors. As discussed

above, we conclude that the district court's evaluation of those factors was legally

erroneous. Alternatively, the dissent contends that the order is supported by

Taylor v. Illinois insofar as imposing a remedy of suppression and relying upon

discovery violations in other cases. Taylor is readily distinguishable and must be

read against its facts. That case involved a "willful and blatant" discovery

violation (failure to timely disclose a defense witness) that appeared to be an

attempt to gain tactical advantage and introduce fabricated testimony. Taylor,

484 U.S. at 416-417. These circumstances led the Court to conclude that "the

case fits into the category of willful misconduct in which the severest sanction is

appropriate." Id. at 417. None of those circumstances are present here.

The Court in Taylor rejected reliance upon unrelated discovery violations to impose such a sanction, although it did leave the door open to discovery violations by the same attorney. Id. at 416 n.21. The problem with the latter rationale in this case is that the judge expressly found that the reason for non-disclosure of fingerprint reports in the other case "was understandable" because a report had "mistakenly indicated that the fingerprint examination was negative." Aplt. App. at 165. The court predicted that had there been earlier disclosure, the government would have found the error "and might have been able to alleviate the necessity of a last minute fight." Id. at 166. Regardless, this combined with what occurred in this case does not justify the drastic sanction of exclusion of evidence without consideration of lesser sanctions. As for discovery violations involving other attorneys in the U.S. Attorneys' Office, we continue to believe that there must be a more developed record with notice and an opportunity to be heard before making that link. That said, we hope the government's statement in its brief will cap the matter: "By his decision in this case, [the trial judge] has sent the message loudly and clearly that the United States must be more consistently proactive in monitoring law enforcement's investigation and reporting, and that

message has been received and understood."  Aplt. Br. at 15.

REVERSED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

**No. 04-3233, United States v. Ivory**

**Seymour, Circuit Judge, dissenting.**

Due to my disagreement with the majority's conclusion that the district court abused its discretion by excluding DNA evidence in response to the government's discovery violations, I respectfully dissent.

On the day of Mr. Ivory's arraignment, January 8, 2004, the district court entered a General Order of Discovery and Scheduling in which it instructed the parties to comply with the Federal Rules of Criminal Procedure, including Rule 16:

> Within a reasonable time period after arraignment, the government shall comply with Rules 12(d)(2) and 16 and *Brady/Giglio*. Pursuant to Rule 16, the government shall copy for the defendant or permit the defendant to inspect and copy or photograph: . . .
>
> Any results or reports of physical or mental examinations and or scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known . . . .

Aplt. App., vol. I, at 17-18. The Order also stated that a request is not necessary to trigger the operation of the Rules and that absence of a request may not be asserted as a reason for noncompliance. *Id*. at 17.

Nearly six months after the Order was issued, defense counsel sent the government a written request to take possession of a firearm found in a vehicle used by Mr. Ivory for independent fingerprint testing. Prompted by this request,

on June 10, 2004, the government provided defense counsel with reports indicating that both a fingerprint analysis and DNA swabbing of the firearm had been conducted in October 2003. The government also advised defense counsel that their forensic expert's report comparing the DNA on the firearms with Mr. Ivory's DNA would not be available until June 23, 2004. Trial was set to begin July 6. Defense counsel filed a motion to exclude the DNA evidence, which the district court granted, on the grounds that the government had violated the discovery order and Rule 16. The question before this court is whether the district court's exclusionary sanction in response to the government's unexcused discovery violations constitutes an abuse of discretion. I conclude that it does not.

Rule 16 warns the parties of the consequences of failing to comply with discovery orders and invests the district court with broad discretion in coping with discovery violations:

> (2) Failure to Comply. If a party fails to comply with this rule, the court may:
> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and condition;
> (B) grant a continuance;
> (C) *prohibit that party from introducing the undisclosed evidence*; or
> (D) enter any other order that is just under the circumstances.

FED. R. CRIM. P. 16(d)(2) (emphasis added). As explained by the majority, the

test for determining whether the district court properly excluded evidence pursuant to Rule 16(d)(2) was expressed in *United States v. Wicker*, 848 F.2d 1059 (10th Cir. 1988):

> When the government fails to comply with a discovery order, the factors the district court should consider in determining if a sanction is appropriate are (1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance.

*Id*. at 1061. In *Wicker*, the court went on to note that "these three factors should merely guide the district court in its consideration of sanctions; they are not intended to dictate the bounds of the court's discretion." *Id*.

The record indicates that the district court weighed the first *Wicker* factor. The court emphasized that although more than five months had passed since the government knew or should have known about the scientific tests that had been conducted on the firearm, the government provided no explanation for the delay in notifying defense counsel. We have consistently held that a district court may justifiably exclude evidence "on the basis of its unexplained untimeliness alone." *See, e.g., United States v. Adams*, 271 F.3d 1236, 1244 (10th Cir. 2001) (per Kelly, J.). As the district court noted here, "[t]here is simply no explanation why the government didn't follow the order and make some inquiry at an earlier date." Aplt. App., vol. I, at 159. Thus, solely on the basis of the government's excessive

and unexcused delay, the district court was entitled to suppress the DNA evidence.

The court also weighed the second *Wicker* factor and concluded that the defendant was prejudiced because the government's delay in producing the DNA test results implicating Mr. Ivory left far too little time for defense counsel to procure an expert of its own to rebut the government's evidence at trial. The government concedes that Mr. Ivory was so prejudiced.

Finally, the court analyzed the feasibility of curing the prejudice with a continuance and decided that a continuance would not remedy the violation for two reasons. First, because the United States Attorney's Office had expressly requested a continuance in order to have its DNA expert available for trial, granting that request would have resulted in the bizarre outcome of rewarding – rather than punishing – the government for its discovery violations. While the government was prepared to subpoena the witness if the district court denied its motion, it did not prefer this course of action given the short notice to the witness and her family vacation plans. Second, because the government had failed to provide evidence to defense counsel in a timely manner in several other cases recently before the court, the evidence needed to be suppressed as a prophylactic measure. The district court stated:

> This is not the first time this kind of issue has come up before this
> court. It's not the first time even in a long time that this issue has

come up. On repeated occasions over the last several weeks and months this court has been confronted with the government having been in a position where it did not supply information to the other side in a way timely enough to have a proceeding go forward without having some in depth discussion about why something wasn't disclosed, what the reasons were, what had happened, and so forth. . . . [T]he cumulative effect of those cases is to tell me that a continuance in this case would not help address the prophylactic issue, and that is that I believe the government needs to get these matters worked out earlier rather than later so that the court and the defense counsel are not left scrambling at the last minute to deal with the fact that the government has not looked at exhibits, found reports, etc., until the last month before trial.

Aplt. App., vol. I, at 164.

We have repeatedly recognized that "[o]n occasion the district court may need to suppress evidence that did not comply with discovery orders to maintain the integrity and schedule of the court even though the defendant may not be prejudiced." *Wicker*, 848 F.2d at 1061 ; *see also Adams*, 271 F.3d at 1244 ("even in the absence of prejudice, a district court may suppress evidence that 'did not comply with discovery orders to maintain the integrity and schedule of the court'"); *United States v. Russell*, 109 F.3d 1503, 1512 (10th Cir. 1997) ("*Wicker*'s admonition that the trial court must impose 'the least severe sanction that will accomplish . . . prompt and full compliance with the court's discovery orders' . . . does not mean that a continuance is necessary just because it will cure the prejudice."). This is because a district court has "inherent power to control and supervise its own proceedings." *United States v. Carrigan*, 804 F.2d 599,

603 (10th Cir. 1986).

The government contends, and the majority agrees, that the district court did not have authority to rely on discovery violations in other cases in determining sanctions in the present case. I reject this argument for two reasons. First, even assuming the government is correct, the district court did not have to rely on a pattern or practice of discovery violations on the part of the government in order to justify its exclusion of the DNA evidence in this case. As discussed above, the court's determination that all three *Wicker* factors weighed in favor of Mr. Ivory was more than enough to entitle it to suppress the evidence, a remedy explicitly authorized by Rule 16. *See* FED. R. CRIM. P. 16(d)(2)(C).

Second, Supreme Court case law strongly suggests the government's argument lacks merit given the particular circumstances of this case. In *Taylor v. Illinois*, 484 U.S. 400, 401-02 (1988), the Court upheld the trial court's refusal to allow a witness to testify as a sanction for a defendant's discovery violation. The Court rejected an argument similar to the one advanced by the government here, that the sanction was "unnecessarily harsh," due to its concern with the impact of the discovery violation on the "integrity of the judicial process." *Id.* at 416. According to the Court,

> [i]t may well be true that alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice [to the

other party] and the harm to the adversary process.

*Id*. at 413.  Moreover, in a footnote, the Court explained that the trial judge had expressed concern about discovery violations in other trials and, while unrelated violations in other cases would not normally provide a proper basis to exclude the evidence, "[i]f those violations involved the same attorney . . . they were relevant."  *Id*. at 416 n.22.  Here, not only was the prosecutor in the instant controversy involved in one of the other cases cited by the district court for a pattern and practice of discovery violations, all of the cases involved attorneys from the same office – the United States Attorneys' Office for the District of Kansas.  Thus, the violations cited by the district court as a basis for its prophylactic sanction were relevant, and not the sort of "[u]nrelated discovery violations" on which it would have been improper for the district court to rely. *Id*.  In *Taylor*, the sanction was against *defense* counsel; obviously discovery violations by other defense counsel in unrelated cases would be totally irrelevant.

I also disagree with the majority's assertion that the district court's reliance, "without prior notice," on four other cases involving the government's discovery conduct was error and forced the government to attempt to improperly supplement the record on appeal.  One of those prior cases involved the same lawyer arguing the government's motion for a continuance, so she clearly had prior notice.  Moreover, if the government wished to discuss or distinguish those

prior cases, it should have filed a motion for reconsideration in the district court before it filed its notice of appeal. Instead, it dilatorily waited six months to attempt to supplement the record in the district court, an attempt the district court justifiably dismissed as untimely. To reward the government under these circumstances certainly runs counter to the district court's right to protect the integrity of its docket by sanctioning the government for a pattern and practice of discovery violations.

In sum, because the government concedes it violated both the discovery order and Rule 16, the district court properly considered each of the *Wicker* factors, and the court determined that the maintenance of the integrity and schedule of the court required suppression due to a pattern or practice of discovery violations on the part of the United States Attorneys' Officer for the District of Kansas, I cannot conclude that the district court abused its discretion. That court is in the best position to assess the proper sanction to cure the government's pattern and practice of discovery violations, and I think we should honor the court's decision rather than undermine it. For the aforementioned reasons, I dissent.