Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>CAROLA DEL MAR ALVARADO VÁZQUEZ<br><br>Recurrida | KLCE202400294 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Caguas<br><br>Crim. núm.:<br>E LE2022G0055<br>E LE2022G0056<br>E1TR202200007<br><br>Por:<br>Infr. Art. 5.07, Art. 7.02, Art. 7.06 de la Ley 22-2000 |

Panel integrado por su presidente, el Juez Sánchez Ramos, la Jueza Santiago Calderón y la Jueza Álvarez Esnard[1].

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de marzo de 2024.

El Tribunal de Primera Instancia ("TPI") ordenó la exclusión de los testimonios de una patóloga forense y del fotógrafo de la correspondiente autopsia, por considerar que se anunciaron de forma tardía. Según se explica a continuación, concluimos que erró el TPI pues el remedio adecuado, en estas circunstancias, no es excluir el testimonio, sino conceder a la defensa el tiempo necesario para prepararse adecuadamente.

I.

Contra la Sa. Carola Del Mar Alvarado Vázquez (la "Imputada") se presentaron varias denuncias penales; se le imputó, en esencia, causar la muerte de una persona (Ariel Muriel Cirino, o la "Víctima"), mientras conducía un "vehículo de motor marca

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron el correspondiente recurso anterior (KLCE202300767).

Mercedes Benz, modelo GLA 250, ... bajo los efectos de bebidas embriagantes".

Luego de los trámites pertinentes, en marzo de 2022, se presentaron dos acusaciones contra la Imputada, por violación a los Artículos 5.06 y 5.07(C) de la Ley 22-2000, 9 LPRA secs. 5126 y 5127(C) (sobre regateo, y causar muerte conduciendo de forma temeraria, respectivamente).

Con el juicio pautado para iniciar el 22 de enero de 2024, el 17 de enero de 2024, el Ministerio Público presentó una *Moción Urgente en Solicitud de Remedio y Anunciando la Inclusión de Testigo* (la "Moción"). Se explicó que, desde que se sometieron las acusaciones, se había anunciado como testigo a la Dra. Lorraine López Morell (la "Patóloga Anterior"), pues ella había realizado la autopsia de la Víctima. Se reseñó, no obstante, que, en abril de 2022, la Patóloga Anterior había renunciado a su trabajo con el Instituto de Ciencias Forense ("ICF"), y que ella ha estado trabajando en el estado de la Florida (*Office of the Medical Examiner, District One*).

El Ministerio Público indicó que, ante la determinación del TPI de denegar la presentación del testimonio de la Patóloga Anterior "mediante el sistema de video conferencia de dos vías", se habían realizado un número de diligencias para lograr que la Patóloga Anterior compareciera a declarar de forma presencial. No obstante, se informó que no era "legalmente viable que el [Estado Libre Asociado] de Puerto Rico perfeccione un contrato ... para lograr la comparecencia" de la Patóloga Anterior. Ello porque el patrono actual de la Patóloga Anterior requiere un contrato con dicha entidad y, a la misma vez, se negó a aceptar la inclusión de ciertas cláusulas que son necesarias de conformidad con las leyes y reglamentación aplicable en Puerto Rico.

Ante la referida situación, el Ministerio Público informó que le había solicitado al ICF, y dicha entidad había acordado producir, un "examen pericial forense independiente" que ilustrara al TPI sobre las "circunstancias de la muerte" de la Víctima. Expuso que dicho examen constaría en una Opinión Pericial preparada por la Dra. María Conte Miller.

Por tanto, el Ministerio Público solicitó que se permitiese la inclusión de la Dra. Conte como testigo con el fin de declarar sobre la "causa y manera de muerte de la víctima en este caso". Como la Dra. Conte, para preparar su opinión, utilizaría las fotos de autopsia tomadas por el Sr. Rafael Olivo Goytia (el "Fotógrafo"), también se solicitó la inclusión de este como testigo.

El Ministerio Público explicó que el TPI tenía discreción para autorizar lo solicitado. Enfatizó que era un "hecho indubitado que [la Víctima] falleció como consecuencia de los traumas que recibió en el accidente de autos" y que, por tanto, la "causa y manera de muerte de la víctima no resulta sorpresiva para la defensa".

Mediante un escrito presentado el 23 de enero, la defensa se opuso a la Moción. Resaltó que la misma se presentó en el último día de la desinsaculación del jurado. Arguyó que la explicación del Ministerio Público para la no disponibilidad de la Patóloga Anterior era "pobre" y que la Moción era "sorpresiva y tardía". Indicó que las fotos de la autopsia no le habían sido entregadas. Adujo que, de concederse la Moción, la defensa se vería obligada a "buscar cuidadosamente y contratar un perito … y solicitar un nuevo descubrimiento de prueba a esos fines".

Por su parte, el 25 de enero, el Ministerio Público le informó al TPI que ya había producido a la defensa (el 22 de enero) un número de documentos y fotos relacionados con el récord médico de la Víctima, así como varios documentos relacionados con la Víctima, su identificación, y sobre el trámite de entrega del cuerpo y autopsia

realizada por el ICF, incluidas las fotos de la misma y la opinión pericial de la Dra. Conte. El Ministerio Público indicó que fue ese mismo día (22 de enero) cuando tuvo posesión de los documentos y fotos entregados.

Mediante una Resolución notificada el 14 de febrero (la "Resolución"), el TPI denegó la Moción. El TPI razonó que la solicitud del Ministerio Público resultaba tardía, en particular en atención a que el Ministerio Público sabía desde algún tiempo antes que la Patóloga Anterior no estaría disponible. Aseveró que el informe de autopsia era "importan[te]" en el caso y que el Ministerio Público no había "sido diligente en la tramitación de la comparecencia de la [Patóloga Anterior] ni justificó la razón por la cual no notificó antes a este Tribunal ni a la defensa sobre el nuevo informe pericial y los nuevos testigos". Concluyó que la inclusión del "nuevo informe … provocaría un perjuicio a la acusada quien tendría que incurrir en la contratación de un perito para evaluar el mismo". El TPI señaló el inicio del juicio para el 4 de marzo de 2024.

Oportunamente, el Ministerio Público solicitó la reconsideración de la Resolución. El Ministerio Público expuso que no había mediado mala fe de su parte. Además, arguyó que lo solicitado no causaría perjuicio a la defensa, pues, luego de que oportunamente se le proveyera la defensa el informe preparado por la Patóloga Anterior, la Imputada "no anunció la contratación de ningún perito para rebatir el mismo". Resaltó que la Opinión de la Dra. Conte "en nada cambia[]" las conclusiones del informe de la Patóloga Anterior, y que, al "no exist[ir] nada distinto", la defensa no se "afecta[ría] en nada". El Ministerio Público también planteó que el TPI no debió aplicar la "sanción más severa", sino que debió acudir a "otras alternativas menos punibles para atender" la situación.

La Imputada se opuso a la moción de reconsideración. Arguyó que el 7 de diciembre de 2023 había solicitado mediante moción

conocer qué testigo, si alguno, no estaría disponible, pero el Ministerio Público guardó silencio. Alegó que el Ministerio Público, conociendo que la Patóloga Anterior no estaría disponible, no lo informó y "orquest[ó] un plan para que la Dra. Conte Miller preparara otro informe", lo cual demostraba su mala fe.

Mediante una Resolución notificada el 5 de marzo, el TPI denegó la referida moción de reconsideración.

Inconforme, el 8 de marzo (viernes), el Ministerio Público presentó el recurso que nos ocupa. Señaló que "es difícil comprender la repentina necesidad de la [Imputada] – en contratar un perito -para rebatir las conclusiones de una opinión pericial independiente que, **en nada**, discrepa del informe médico de autopsia." Arguyó que ello "parece ser una estrategia acomodaticia para no permitir la inclusión de la doctora Conte Miller" y "privar[] así al Ministerio Público de una prueba esencial en su caso".

Planteó que "cualquier perjuicio" a la defensa, podía "subsanarse con la concesión de tiempo para prepararse sobre la opinión pericial, que ya se le entregó hace más de un mes". Concluyó que "imponer la sanción más severa de excluir un testimonio esencial del Ministerio Público, cuando existe ese remedio alternativo no perjudicial, sin duda, es un claro abuso de discreción". El Ministerio Público arguyó que no tenía pertinencia, en este contexto, la moción de la defensa del 7 de diciembre de 2023, ello porque la misma lo que solicitaba era conocer si el Ministerio Público utilizaría "testimonio anterior" de un testigo ahora no disponible, lo cual no es el caso aquí.

Finalmente, el Ministerio Público resaltó que, de haberse concedido la Moción, el itinerario del juicio no se hubiese afectado porque los testigos nuevos no se habrían presentado hasta la "primera semana de abril".

Mediante una Resolución emitida el 11 de marzo, y a solicitud del Ministerio Público, paralizamos los procedimientos ante el TPI y le concedimos a la Imputada hasta el 18 de marzo para mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la Resolución. La Imputada compareció y reprodujo lo planteado ante el TPI en cuanto a la supuesta mala fe del Ministerio Público al no ser diligente en obtener la comparecencia de la Patóloga Anterior y al informar de forma tardía que esta no sería testigo en el caso[2]. Resolvemos.

## II.

La norma es que el TPI tiene discreción para permitir la inclusión de testigos no anunciados en el juicio. *Pueblo v. Ramos Álvarez*, 118 DPR 782, 789 (citando *Pueblo v. Santiago*, 56 DPR 109 (1940)). Ahora bien, para determinar cómo ejercer dicha discreción, debe tomarse en cuenta si lo solicitado por el Ministerio Público causaría un perjuicio indebido a la defensa. *Íd.*

Por ejemplo, en la jurisdicción federal, se toma en cuenta si el Ministerio Público actuó de mala fe y las razones que hubo para la tardanza en anunciar el testigo; el grado de perjuicio a la defensa; y

---

[2] En una moción de prórroga del 15 de marzo, la Imputada alegó que el Procurador General no le había notificado el recurso por correo electrónico, y que el mismo no fue recibido, por correo certificado, sino hasta el día antes (14 de marzo). Posteriormente, el Procurador General certificó que sí había notificado a la defensa, por correo electrónico enviado el mismo día de su presentación, el recurso junto con sus anejos y la moción en auxilio de jurisdicción. No obstante, el 25 de marzo, la Imputada replicó que no había recibido el referido correo electrónico y, además, solicitó la desestimación del recurso sobre la base de que los anejos del recurso no fueron incluidos junto con el recurso que recibió, el 14 de marzo, por correo certificado. Hemos determinado denegar la referida moción de desestimación, pues el Procurador General demostró satisfactoriamente haber enviado oportunamente el recurso y sus anejos por correo electrónico a la defensa. De todas maneras, aun si el correo electrónico no se hubiese recibido, la defensa admitió que, **desde el 14 de marzo**, recibió el recurso oportunamente enviado por correo certificado y, aun si se hubiesen omitido los anejos en dicho envío, ello no conllevaría la desestimación del recurso. Véase Regla 12.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 12.1 (las "disposiciones sobre los requisitos de notificación a las partes ... deberán interpretarse de forma que se reduzcan al mínimo las desestimaciones de los recursos. ... el Tribunal de Apelaciones deberá proveer una oportunidad razonable para la corrección de defectos de forma o de notificación que no afecten los derechos de las partes"). Adviértase, además, que la defensa no ha planteado que sus derechos o capacidad para oponerse al recurso se haya afectado de forma alguna por la supuesta omisión de los anejos; de hecho, el mismo 25 de marzo, la Imputada presentó su oposición a los méritos de lo planteado en el recurso de referencia.

la viabilidad de eliminar dicho perjuicio a través de una posposición del proceso. *US v. Golyansky*, 291 F.3d 1245, 1249 (10mo Cir. 2002); véanse, además, *US v Sandoval-Rodríguez*, 452 F.3d 984, 989 (8vo. Cir. 2006); *US v. DeCoteau*, 186 F.3d 1008 (8vo Cir. 1999).

De ser necesario sancionar al Ministerio Público, lo "preferible" es posponer el proceso y, en ausencia de mala fe, es "raro" que se excluya la evidencia propuesta y se deniegue una posposición. *Golyansky*, 291 F.3d a la pág. 1249.

Para concluir que la defensa ha sufrido perjuicio, es necesario que se demuestre que se ha afectado adversamente la capacidad del acusado de defenderse adecuadamente. *Golyansky*, 291 F.3d a la pág. 1250. Al evaluar el curso de acción apropiado, el tribunal debe evaluar si una posposición le permitiría a la defensa prepararse adecuadamente ante la inclusión de nueva prueba. *Íd.* Ordinariamente, debe imponerse el remedio menos severo disponible para remediar cualquier perjuicio a la defensa. *US v. Maples*, 60 F.3d 244, 247 (6to Cir. 1995).

III.

Concluimos que erró el TPI al denegar la Moción. El récord no le permitía concluir al TPI que medió mala fe de parte del Ministerio Público. De hecho, el Ministerio Público suplió una relación cronológica detallada de sus múltiples esfuerzos para evitar tener que recurrir a testigos no anunciados anteriormente.

En cualquier caso, y como cuestión de derecho, el factor más importante a examinarse era el grado de perjuicio a la defensa y, de haber perjuicio, si había medidas menos drásticas que la exclusión de la prueba para remediar dicho perjuicio.

En este caso, la defensa aseveró que, supuestamente, necesitaría contratar un perito para examinar el informe de autopsia de la Dra. Conte y las fotos de la autopsia. No obstante, la defensa

no ha explicado por qué ello sería necesario en las circunstancias particulares de este caso.

Adviértase que la defensa desde mucho antes de presentada la Moción contaba con el informe de la Patóloga Anterior, el cual el Ministerio Público ha representado que contiene las mismas conclusiones que el informe de la Dra. Conte. Por tanto, no estamos ante una situación de sorpresa para la defensa; tampoco la defensa ha aseverado que podría ser viable impugnar con éxito la prueba del Ministerio Público en cuanto a la causa de muerte de la Víctima[3].

En cualquier caso, el TPI pudo haber continuado con el juicio según señalado y haber calendarizado el día del testimonio de la Dra. Conte y del Fotógrafo para una fecha posterior que le permitiese a la defensa contratar un perito, si así lo estimase conveniente.

En fin, ante las circunstancias particulares de este caso, concluimos que el TPI no sopesó adecuadamente los intereses en conflicto, por lo cual debió tomar las medidas de calendario necesarias que le permitiesen al Ministerio Público presentar los dos testigos anunciados en la Moción, mientras se le aseguraba a la Imputada su derecho a prepararse y defenderse adecuadamente.

IV.

Por los fundamentos que anteceden, se expide el auto de *certiorari* solicitado, se revoca la *Resolución* recurrida y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto y dispuesto.

---

[3] El caso en el cual descansa principalmente la defensa, *US v. Davis*, 244 F.3d 666 (8vo Cir. 2001), es distinguible. Allí se trataba de evidencia nueva de naturaleza "altamente técnica"; en cambio, en este caso, se trata de un informe de autopsia cuyas conclusiones el Ministerio Público categóricamente ha afirmado que son iguales a las del informe entregado anteriormente a la defensa y sobre un asunto que usualmente no es contencioso en este tipo de caso (que la víctima de un accidente vehicular murió por causa del accidente, en vez de por "otras" causas).

Al amparo de la Regla 211 de Procedimiento Criminal,[4] Regla 211 de Procedimiento Criminal, 34 LPRA Ap. II,R. 211, dejamos sin efecto la suspensión de los procedimientos; el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que tenga que esperar por nuestro mandato.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[4] La Regla 211 de Procedimiento Criminal, 34 LPRA Ap. II,R. 211, dispone:
En situaciones no previstas por la ley, estas reglas o las reglas que apruebe el Tribunal Supremo, tanto éste como el Tribunal de Circuito de Apelaciones, encauzarán el trámite en la forma que a su juicio sirva los mejores intereses de todas las partes. Queda reservada la facultad del Tribunal Supremo y del Tribunal de Circuito de Apelaciones para prescindir de términos, escritos o **procedimientos específicos** en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho.
Véase también: *Pueblo v. Tribunal de Distrito*, 97 DPR 241 (1969); *Perez v. Corte*, 50 DPR 540 (1936).