Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>MIGUEL ÁNGEL RODRÍGUEZ NIEVES<br><br>Recurrido | KLCE202400426 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Carolina<br><br>Crim. núm. F VI2022G0016 y otros<br><br>Por: Art. 93 (E) C.P. y otros |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Marrero Guerrero.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2024.

El Tribunal de Primera Instancia ("TPI") ordenó la exclusión de los testimonios de una patóloga forense y del fotógrafo de la correspondiente autopsia, por considerar que se suscitaba un problema de "cláusula de confrontación" relacionado con la no disponibilidad de otra patóloga cuyo informe el Ministerio Público no se propone utilizar. Según se explica a continuación, concluimos que erró el TPI, pues (i) no hay problema alguno de confrontación, pues la patóloga y el fotógrafo anunciados por el Pueblo declararán, sujeto a contrainterrogatorio, sobre el trabajo realizado por ellos y (ii) no hay impedimento jurídico alguno para que se incluya como testigos a la patóloga y el fotógrafo.

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron el correspondiente recurso anterior (KLCE202300990).

I.

Contra el Sr. Miguel A. Rodríguez Nieves (el "Imputado") se presentaron varias denuncias penales; se le imputó, en esencia y en lo pertinente, haber asesinado a la Sa. Melissa Belén Falú Allende (la "Víctima"), "mediante la modalidad de herida de bala en la cabeza con un arma de fuego".

Luego de los trámites pertinentes, en noviembre de 2022, se presentaron varias acusaciones contra el Imputado, por violación a los Artículos 93 y 280 del Código Penal, 33 LPRA 5142 & 5373 (sobre asesinato y encubrimiento), y a los Artículos 6.22, 6.12(b) y 6.08 de la Ley 168-2019 (Ley de Armas), 25 LPRA secs. 466u, 466k & 466g.

El 16 de enero de 2024, el Ministerio Público presentó una *Moción Urgente en Solicitud de Remedio y Anunciando la Inclusión de Testigo* (la "Moción"). Se explicó que, desde que se sometieron las acusaciones, se había anunciado como testigo a la Dra. Lorraine López Morell (la "Patóloga Anterior"), pues ella había realizado la autopsia de la Víctima y preparado un informe al respecto (el "Informe Anterior"). Se reseñó, no obstante, que, en abril de 2022, la Patóloga Anterior había renunciado a su trabajo con el Instituto de Ciencias Forense ("ICF"), y que ella ha estado trabajando en el estado de la Florida (*Office of the Medical Examiner, District One*).

El Ministerio Público indicó que se habían realizado un número de diligencias para lograr que la Patóloga Anterior compareciera a declarar de forma presencial. No obstante, se informó que no era "legalmente viable que el [Estado Libre Asociado] de Puerto Rico perfeccione un contrato ... para lograr la comparecencia" de la Patóloga Anterior. Ello porque el patrono actual de la Patóloga Anterior requiere un contrato con dicha entidad y, a la misma vez, se negó a aceptar la inclusión de ciertas cláusulas que son necesarias de conformidad con las leyes y reglamentación aplicable en Puerto Rico.

Ante la referida situación, el Ministerio Público informó que le había solicitado al ICF, y dicha entidad había acordado producir, un "examen pericial forense independiente" que ilustrara al TPI sobre las "circunstancias de la muerte" de la Víctima. Expuso que dicho examen constaría en una Opinión Pericial preparada por la Dra. Irma Rivera Diez (el "Informe Nuevo").

Por tanto, el Ministerio Público solicitó que se permitiese la inclusión de la Dra. Rivera como testigo con el fin de declarar sobre la "causa y manera de muerte de la víctima en este caso". Como la Dra. Rivera (la "Patóloga Nueva"), para preparar su opinión, utilizaría las fotos de autopsia tomadas por el Sr. Eric René Laboy (el "Fotógrafo"), también se solicitó la inclusión de este como testigo.

Mediante un escrito presentado el 7 de febrero, la defensa se opuso a la Moción. Arguyó que el Informe Anterior no era admisible sin el testimonio de la Patóloga Anterior, y que la no disponibilidad de la Patóloga Anterior era imputable al Pueblo[2]. Además, planteó que el Informe Nuevo no era confiable, por estar basado en "fotos y otras consideraciones y no en el examen del cuerpo", lo cual no era un método "aceptado generalmente en la comunidad científica".

Mediante una Resolución notificada el 22 de febrero (la "Resolución"), el TPI denegó la Moción. El TPI razonó que la "propuesta del Ministerio Público … incumple el requisito de umbral de la cláusula de confrontación y la no disponibilidad del declarante" (sic).

El 27 de febrero, el Ministerio Público solicitó la reconsideración de la Resolución, lo cual fue denegado por el TPI mediante una Resolución notificada el 13 de marzo. El TPI mantuvo el señalamiento del juicio para el 11 de abril.

---

[2] Dado que el Ministerio Público renunció a utilizar el Informe Anterior y no propuso utilizar declaraciones de la Patóloga Anterior, no está clara la pertinencia de este planteamiento.

Inconforme, el 11 de abril, el Ministerio Público presentó el recurso que nos ocupa. Arguyó que, en todo caso, el asunto de la admisibilidad del Informe Nuevo es un asunto que "corresponde a la etapa del juicio en su fondo, con la celebración de una vista bajo la Regla 109" de las de Evidencia. Planteó que el TPI erradamente se había "colocado en los zapatos del Ministerio Público", pretendiendo "dicta[rle] la prueba que puede y no puede presentar en el juicio". Resaltó que el Ministerio Público no tiene que explicar ni fundamentar las razones para eliminar a un testigo de cargo. Sostuvo que la inclusión de la Patóloga Nueva no causa perjuicio a la defensa, pues desde el inicio de proceso, el Imputado sabía que el Ministerio Público presentaría un(a) patólogo(a) forense para probar la causa de muerte de la Víctima.

Mediante una Resolución de 15 de abril, le ordenamos al Imputado mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la Resolución. El Imputado compareció; en esencia, planteó que las fotografías usadas para preparar el Informe Nuevo "no pueden sustituir lo que es el examen de un cuerpo". Arguyó que "una opinión pericial basada en fotografías … es una burla en la forma de determinar la causa y manera de una muerte, lo cual es contrario a los principios y métodos confiables de la ciencia forense". El Imputado nos invita a que determinemos si la opinión de la Patóloga Nueva "cumple con los criterios específicos de la Regla 702 de Evidencia". Resolvemos.

II.

La norma es que el TPI tiene discreción para permitir la inclusión de testigos no anunciados en el juicio. *Pueblo v. Ramos Álvarez,* 118 DPR 782, 789 (citando *Pueblo v. Santiago,* 56 DPR 109 (1940)). Ahora bien, para determinar cómo ejercer dicha discreción, debe tomarse en cuenta si lo solicitado por el Ministerio Público causaría un perjuicio indebido a la defensa. *Íd.*

Por ejemplo, en la jurisdicción federal, se toma en cuenta si el Ministerio Público actuó de mala fe y las razones que hubo para la tardanza en anunciar el testigo; el grado de perjuicio a la defensa; y la viabilidad de eliminar dicho perjuicio a través de una posposición del proceso. *US v. Golyansky*, 291 F.3d 1245, 1249 (10mo Cir. 2002); véanse, además, *US v. Sandoval-Rodríguez*, 452 F.3d 984, 989 (8vo. Cir. 2006) y *US v. DeCoteau*, 186 F.3d 1008 (8vo Cir. 1999).

De ser necesario sancionar al Ministerio Público, lo "preferible" es posponer el proceso y, en ausencia de mala fe, es "raro" que se excluya la evidencia propuesta y se deniegue una posposición. *Golyansky*, 291 F.3d a la pág. 1249.

Para concluir que la defensa ha sufrido perjuicio, es necesario que se demuestre que se ha afectado adversamente la capacidad del acusado de defenderse adecuadamente. *Golyansky*, 291 F.3d a la pág. 1250. Al evaluar el curso de acción apropiado, el tribunal debe evaluar si una posposición le permitiría a la defensa prepararse adecuadamente ante la inclusión de nueva prueba. *Íd.* Ordinariamente, debe imponerse el remedio menos severo disponible para remediar cualquier perjuicio a la defensa. *US v. Maples*, 60 F.3d 244, 247 (6to Cir. 1995).

III.

Concluimos que erró el TPI al denegar la Moción. El récord no le permitía concluir al TPI que medió mala fe de parte del Ministerio Público. De hecho, el Ministerio Público suplió una relación cronológica detallada de sus múltiples esfuerzos para evitar tener que recurrir a testigos no anunciados anteriormente.

En cualquier caso, y como cuestión de derecho, el factor más importante a examinarse era el grado de perjuicio a la defensa y, de haber perjuicio, si había medidas menos drásticas que la exclusión de la prueba para remediar dicho perjuicio.

En este caso, la defensa no ha articulado, ni podemos concluir que se haya producido, perjuicio alguno. Adviértase que los nuevos testigos se anunciaron casi tres meses antes del señalamiento de juicio, por lo cual la defensa ha tenido tiempo suficiente para prepararse. En cualquier caso, el TPI siempre tenía, y tiene, disponible la alternativa de posponer el juicio para brindarle a la defensa la oportunidad de prepararse adecuadamente ante el cambio en la prueba anunciado por el Ministerio Público.

Por otra parte, y contrario a lo razonado por el TPI, en este contexto no está en juego el derecho del Imputado a confrontar la prueba en su contra. Así lo admite implícitamente la defensa al no elaborar teoría alguna al respecto en su comparecencia ante este Tribunal. En efecto, no hay problema de confrontación aquí porque el Ministerio Público no pretende que se admita ni el Informe Anterior, ni declaración alguna de la Patóloga Anterior. Por tanto, tampoco tiene pertinencia, en este contexto, las razones por las cuales el Ministerio Público anunció que no utilizaría en el juicio a la Patóloga Anterior ni tampoco la naturaleza de las diligencias para obtener su comparecencia[3].

En cuanto al planteamiento de la defensa sobre la admisibilidad de la opinión de la Patóloga Nueva, el TPI no estaba en posición de pasar juicio al respecto en esta etapa. Se trata de un asunto a ser dilucidado en la etapa del juicio, a través del mecanismo provisto por la Regla 109 de las de Evidencia. 32 LPRA, Ap. VI, R. 109. Sin recibir prueba al respecto, ni el TPI podía, ni este Tribunal puede, en esta etapa, pasar juicio sobre este asunto.

Resaltamos, sin embargo, que, de conformidad con la Regla 702 de las de Evidencia, 32 LPRA Ap. VI, R. 702 ("Regla 702"), se justifica la prueba pericial cuando conocimiento científico, técnico, o especializado sea de ayuda para el juzgador entender la

---

[3] Del récord surge claramente que no estamos ante "evidencia voluntariamente suprimida" por el Ministerio Público, por lo que no aplica la presunción que al respecto establece la Regla 304 de las de Evidencia. 32 LPRA Ap. VI, R. 304.

prueba. La admisibilidad de prueba pericial depende de su pertinencia y de que se supere el análisis establecido en la Regla 403 de las de Evidencia.[4] Véase Regla 702 ("La admisibilidad del testimonio pericial será determinada por el tribunal de conformidad con los factores enumerados en la Regla 403").

En cuanto al peso que pueda concedérsele a la nueva prueba anunciada, de admitirse la misma, ello sería oportunamente dilucidado por el juzgador de hechos. El valor probatorio de un testimonio pericial dependerá de: a) si el testimonio está basado en hechos o información suficiente, b) si el testimonio es el producto de principios y métodos confiables, c) si el perito aplicó los principios y métodos de manera confiable a los hechos del caso, d) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica, e) las calificaciones o credenciales del perito, y f) la posible parcialidad del testigo. Regla 702 de Evidencia, *supra*; *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011).[5]

IV.

Por los fundamentos que anteceden, se expide el auto de *certiorari* solicitado, se revoca la *Resolución* recurrida y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma compatible con lo aquí resuelto y dispuesto.

---

[4] Evidencia pertinente puede ser excluida cuando su valor probatorio queda sustancialmente superado por cualesquiera de estos factores:
   (a) riesgo de causar perjuicio indebido
   (b) riesgo de causar confusión
   (c) riesgo de causar desorientación del Jurado
   (d) dilación indebida de los procedimientos
   (e) innecesaria presentación de prueba acumulativa.
32 LPRA Ap. VI, R 403.

[5] En lo pertinente, el Prof. Chiesa aclara que:
   Bajo esta regla 702, el tribunal goza de mucha mayor discreción que la que permiten *Frye* y *Daubert*. Hay una patente imbricación entre admisibilidad y valor probatorio. Esto es, para determinar si la prueba pericial es admisible, el tribunal estima su valor probatorio a la luz de los elementos enumerados en la Regla 702 (entre otros) y los pesa frente al perjuicio indebido que pudiera generar la admisión de esa evidencia.
Ernesto L. Chiesa, <u>Reglas de Evidencia Comentadas</u>, Ed. Situm, 2016, pág. 240.

Al amparo de la Regla 211 de Procedimiento Criminal,[6] Regla 211 de Procedimiento Criminal, 34 LPRA Ap. II, R. 211, el Tribunal de Primera Instancia puede proceder de conformidad con lo aquí resuelto, sin que tenga que esperar por nuestro mandato.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[6] La Regla 211 de Procedimiento Criminal, 34 LPRA Ap. II, R. 211, dispone:

En situaciones no previstas por la ley, estas reglas o las reglas que apruebe el Tribunal Supremo, tanto éste como el Tribunal de Circuito de Apelaciones, encauzarán el trámite en la forma que a su juicio sirva los mejores intereses de todas las partes. Queda reservada la facultad del Tribunal Supremo y del Tribunal de Circuito de Apelaciones para prescindir de términos, escritos o **procedimientos específicos** en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho.

Véase, también: *Pueblo v. Tribunal de Distrito*, 97 DPR 241 (1969); *Pérez v. Corte*, 50 DPR 540 (1936).